JOHN FLUKE *vs.* THE EXECUTORS OF FLUKE and others.

1. A direction by a testator "that all the rest and residue of his estate of what kind soever there might be at the time of his death," should be converted into money by his executors, &c., extends to and includes such real estate as he may have acquired after the making of the will, and such land is subject to the power of sale conferred upon the executors.

2. Until the sale be made, the legal title descends to and vests in the heirs-at-law of the testator, as tenants in common.

3. The heir-at-law takes the legal title charged with the trusts created by the will. Equity will not interfere with the execution of the trusts by the executors. It regards as actually performed, that which is directed to to be done.

4. Lands directed by the testator to be sold and converted into money, and the proceeds distributed either among the heirs or other legatees, is regarded as a gift of money.

5. Where the whole beneficial interest in the land directed to be converted into money, belongs to the person or persons for whose use it is given, equity will not compel the trustee to execute the trust against the wishes of the *cestui que trust*, but will permit him to take the land, if he elect to do so before the conversion has actually been made. But where there are several *cestui que trusts* taking different interests under the will from what they would do as heirs-at law, there is no case for the application of the doctrine of election, and the executor must perform the trust created by the will.

*Leport*, for complainant.

*Thompson*, for defendants.

THE CHANCELLOR. The bill is filed for the partition of a tract of land in the county of Morris, of which John Fluke, the father of the complainant, died seized.

The complainant claims title to one fifth of the tract, as one of the heirs-at-law of his father. The father died on the 1st of August, 1862, leaving a last will and testament, duly executed to pass real estate. By his will, bearing date on the 15th day of December, 1856, and by a codicil thereto, the testator, after certain specific bequests, ordered and directed, that "all the rest and residue of his estate, of what kind soever there might be at the time of his death," should be converted into money by his executors, and one fifth part thereof paid to each of his four children then living, and the remaining one fifth to the four children of a deceased son of the testator, to be divided between them in unequal shares, *viz.* one equal half thereof to the grandson, and the other half equally between three grand daughters.

The land in question was conveyed to the testator on the 14th of October, 1858, after the date of the will and of the codicil.

Under the act of 1851, (*Nix. Dig., p.* 917, § 3,) real estate acquired by a testator after the making of his will, is subject to the disposition made by the will, either by devise or by power of sale. The testamentary disposition extends to all the estate of whatever kind which the testator might own at the time of his death, and necessarily includes the land in question. The rights of the complainant are, therefore, in no wise affected by the fact that the land was acquired by the testator after the making of his will.

The will contains no actual disposition of the lands, but confers upon the executors a naked power of sale. Until the sale be made, the legal title descends to, and vests in the heirs-at-law of the testator. The complainant is, therefore, seized in fee, as tenant in common with the other heirs of his father, of the one equal fifth part of the land in question. *Herbert* v. *Executor of Tuthill, Saxton* 141; *Bergen* v. *Bennett,* 1 *Caines' Cases in Error* 16; *Gest* v. *Flock,* 1 *Green's Ch. R.* 108, 113.

But the heir-at-law takes the legal title charged with the trusts created by the will. The land is directed to be converted into money by the executors, and the proceeds to be distributed in the mode designated by the testator. Equity will not interfere with the execution of the trusts by the executors. It regards as actually performed that which is directed to be done. Lands directed by the testator to be sold and converted into money, and the proceeds distributed either among the heirs or other legatees, is regarded as a gift of money. *Fletcher* v. *Ashburner,* 1 *Bro. Ch. Cases,* 497; *Craig* v. *Leslie,* 3 *Wheaton* 563.

It is true that where the whole beneficial interest in the land thus directed to be converted, belongs to the person or persons for whose use it is given, equity will not compel the trustee to execute the trust against the wishes of the *cestui que trust,* but will permit him to take the land, if he elect to do so before the conversion has actually been made. *Gest* v. *Flock,* 1 *Green's Ch. R.* 115; *Craig* v. *Leslie,* 3 *Wheaton*

563; *Osgood* v. *Franklin*, 2 *Johns. Ch. R.* 21; *Story's Eq. Jur.*, § 793.

But the whole beneficial interest in the land sought to be sold, is not in the complainant. The other *cestui que trusts* are interested in the due execution of the trusts created by the will. They have not joined in the prayer for partition. The devisees of one share are infants. They take, moreover, as legatees, different interests under the will, from what they would do as heirs-at-law. It is not a case, therefore, for the application of the doctrine of election; nor does the complainant rest his case upon this ground.

As the facts are all admitted upon the face of the bill and answer, no benefit can result from a reference to a master.

The bill must be dismissed.