Cook's Executor v. Cook's Administrator.

COOK'S EXECUTOR vs. COOK'S ADMINISTRATOR and others.

1. If the direction of the will, as to the proceeds, require a sale, it is equivalent to a positive direction to sell, and the land is deemed personal property from the death of the testator; but if it is optional with the executor whether to sell or not, or if it is only an authority to sell without any direction, then the land retains its character as land until actually sold.

2. When land, for a certain purpose, is required to be converted into money, and in the sale more is sold than is required for that purpose, the excess of the proceeds will be considered as land.

3. Such excess constituting the residue of the estate, which, by the will, went to the nephew of testatrix, who has since deceased, his widow is entitled to dower therein, free from her husband's debts, and his heirs are liable to his debts to the amount they may receive of it. If the widow will accept it, a gross sum in lieu of dower will be ordered.

4. On a bill filed by an executor for the direction of the court as to the disposition of the balance in his hands, ascertained by a decree of the Orphans Court, consisting of the surplus proceeds of the sale of real estate over debts and legacies, which surplus was claimed by the administrator of the devisee of testator, who died before the sale, and whose personal estate was insufficient to pay his debts: *Held*—That the administrator, not having obtained an order of the Orphans Court to sell the land of his intestate to pay debts, was not entitled to receive the part of the surplus, the right to which was vested in the heirs of such intestate; but as the heirs, if they received it, would be liable for the debts of the intestate to the amount they received, and as the administrator, representing the creditors, and all the parties in interest were before the court, it was referred to a master to ascertain and report what amount was required to pay the debts of intestate, over and above the personal estate that came to such administrator's hands, and in what amount the administrator should give security; also, if the widow of intestate was willing to take a gross sum in lieu of dower, to ascertain and report the amount thereof, the surplus to go according to the principles stated in opinion.

This cause was argued upon the pleadings and proofs.

*Mr. Hutchinson,* complainant, *pro se.*

*Mr. A. S. Jackson,* defendant, *pro se.*

*Mr. F. Voorhees,* for widow and infants, defendants.

THE CHANCELLOR.

The bill in this case was filed by M. Hutchinson, executor of the will of Sarah Cook, deceased, for the direction of this court as to the estate of his testatrix in his hands. The defendants are A. S. Jackson, the administrator of Charles Cook, deceased, who was the residuary legatee and devisee in the will of Sarah Cook, and who survived her two days, and also the widow and infant children of Charles Cook.

Sarah Cook, by her will, after sundry pecuniary legacies, gave all the residue of her estate, both real and personal, to her nephew, Charles Cook, his heirs and assigns forever. She also directed as follows: " I do authorize and empower my executors herein after named, or the survivor of them, to sell and dispose of all my real estate." She appointed the complainant and Charles Cook executors of her will. Charles Cook having died two days after the death of testatrix, the complainant proved the will, and letters testamentary were issued to him. The personal estate not being sufficient to pay the debts and the pecuniary legacies, the complainant, under the power in the will, sold all her real estate. Upon the final adjustment of his accounts, there was a surplus of the estate of the testatrix in his hands after the payment of debts, legacies, and expenses of administration. This surplus, amounting to $2550.22, was the residue of the estate which was given to Charles Cook. Administration of the estate of Charles Cook was granted to the defendant, Jackson. The personal estate of Charles Cook was insufficient to pay his debts, and the administrator claims that he is entitled to have this money, the proceeds of the real estate, paid to him as personal estate to be administered. He denies that the widow has any claim to any part of it for her dower, which, he contends, she must have set off from the lands sold in the hands of the purchaser. The testatrix died January 15th, 1867, and the complainant sold the lands in May, 1868, more than a year after the death of Charles Cook.

The widow of Charles Cook claims the right to have one third of this residue invested for her life, that she may re-

ceive the interest as the value of her dower; and the infant children claim, that as the real estate on the death of their father descended to them as land, they are entitled to the proceeds, and that they are not personal property, and do not go to the administrator.

The claim of the administrator depends upon the position that, at the death of Charles Cook, this real estate must be considered as converted into money, in consequence of the authority to sell given in the will, and that it must, therefore, be treated and administered as money. This conclusion is correct, if, by the doctrine of equitable conversion, it must be considered as converted into money from the death of the testatrix.

When land is directed to be sold, absolutely and positively, without any time fixed for the sale, it is considered as converted into money from the death of the testator; but for this, the direction must be imperative. If it is optional with the executor whether to sell or not to sell, or if it is only an authority to sell without any direction, then the land retains its character as land until it is actually sold. If the direction of the will, as to the proceeds, require a sale, it is equivalent to a positive direction to sell, and the land is deemed personal property from the death of the testator. 1 *Jarman on Wills* 530; 1 *Lead. Cas. in Eq.* 674, notes to *Fletcher* v. *Ashburner*; *Polley* v. *Seymour*, 2 *Younge & Coll.* *Ex.* 708.

When land for certain purposes is required to be converted into money, and in the sale more is sold than is required for that purpose, the excess of the proceeds will be considered as land. *Oberle* v. *Lerch*, 3 *C. E. Green* 346, 575.

In this case, the executor was not directed or required to sell, except so far as a sale was necessary for the purpose of paying debts and the legacies directed to be paid. As to the rest it was a mere power which he could exercise or not, at his discretion, and, therefore, the land must be con-

21*

sidered to have retained its character as land until the actual sale.

At the death of Charles Cook, then, it retained its character of land, and he died seized of it in fee. His widow was, therefore, entitled to dower, and subject to that dower it descended to his children. The power of sale in the will of Sarah Cook conveyed the estate as she had it at her death, and thus divested the estates in the land which had devolved upon the widow and children of Charles; but their estate remained in and followed the proceeds of sale in the hands of the executor. The widow was entitled to her dower free from the debts of her husband; but the land in the hands of his heirs was subject to his debts. It could have been sold for the payment of them at any time by order of the Orphans Court of the county in which they were situate. It remained subject to these debts for a year, and until sold by the heirs. But the administrator neglected to take the proceedings necessary to procure the power to sell. Lands at common law are not subject to payment of debts; they are made so by statute. The debts of the living are raised out of them by judgment and execution; the debts of the dead by proceedings in the Orphans Court. For these objects, in both cases, the directions of the statute must be followed. Had the interest of the intestate in these lands been sold, the purchaser would have stood in his place, and would have been entitled to this surplus, subject to the widow's dower. As the matter now stands, the administrator is not entitled to receive it. But the infant heirs, if they receive it, will be liable for the debts of the intestate, to the amount which they may receive. The administrator is in court representing the creditors of the intestate, and all the parties in interest are thus before the court, and it will be for the advantage of all that their interests in this fund be ascertained and settled, and the fund be distributed under· the direction of the court.

But it does not appear how much the personal estate of the intestate falls short of his debts; to that extent only can

it be directed to be paid to the administrator. The administrator, too, must be required to give bond, with sureties, for the faithful administration of this fund. It must, therefore, be referred to a master, to ascertain and report what amount is required for the payment of the debts of Charles Cook, over and above the personal estate that has come to his administrator, and in what amount the administrator should be required to give security; and if the widow is willing to accept a gross sum in lieu of her dower, what sum is a proper proportion of the surplus proceeds of the sale, according to the tables adopted by this court.

When these matters are settled and ascertained, the complainant will be directed to pay the surplus according to the principles herein declared.