The complainant seeks partition of lands described in the bill of complaint, and in the alternative, that the estate of Lena Konner be administered and the property sold and the proceeds distributed among those entitled thereto. Primary, or alternative, relief depends upon whether the property is still real estate or has been equitably converted into personalty. The complainant claims its right and title through a deed made by Joseph G. Wolber as special master. This deed conveyed to the complainant "all the right, title and interest *Page 547 
of the defendants, Josef Konner, Rachel Konner, Abe (known sometimes as Abram or Abraham) Konner and Kevah Konner, as such right, title and interest existed as of the 11th day of October, 1927," in the lands and premises described in paragraph 2 of the bill of complaint.
The complainant says, included in the rights of Josef Konner was the one-sixth right of Louis Konner (one of the children of Lena Konner, hereafter referred to), who assigned his interest to Josef Konner by deed of assignment dated May 21st, 1921, and recorded the same day. The bill states that the complainant acquired the rights of Josef Konner in a part of the lands and premises described in the bill, through a deed dated March 10th, 1931, from Theodore Connet, receiver for the purpose of sale. Some of the lands described in the deed from the receiver Connet are also described in the deed from Wolber as special master, which deed is dated August 3d 1932. The deed of the receiver Connet was made pursuant to an order of this court in a suit entitled "Bonded Building and Loan Association, complainant, and Josef Konner et al., defendants, Docket 72, page 38," on the 15th of March, 1930, and, besides the life estate of Josef Konner in part of the lands and premises which are the subject-matter of this suit, conveyed contiguous lands upon which stood a hotel, and, in connection with which part of the lands and premises which are the subject-matter of this suit were used for the purpose of water, sewage and roads. The sale through which the deed of the receiver Connet was given, was made pursuant to an order of this court directing a sale pendente lite foreclosure; the sale was confirmed May 2d 1930. The sale through which the deed from Wolber, as special master, was given, dated August 3d 1932, was in pursuance of a final decree of this court made July 1st, 1931. From this last mentioned decree, the defendants Josef Konner, Abe Konner and Kevah Konner appealed to the court of errors and appeals. That court, on April 28th, 1933, affirmed the decree in an opinion by Mr. Justice Bodine (reported in 113 N.J. Eq. 99), who in part said:
"There is no merit in the assertion that the decree is erroneous, because by the will of Lena Konner there was a conversion *Page 548 
of the lands. Conceding this to be so, but we do not pass upon the point, a mortgage operates upon whatever interest the mortgagor had and anything the subject of contract or assignment may be mortgaged. Neligh v. Michenor, 11 N.J. Eq. 539. The mortgagors could assign any interest they took under the will of Lena Konner and they could therefore mortgage it. Further the assertion that other beneficiaries under the will may be involved in litigation can make no difference. The purchaser at foreclosure sale secures the right, title and interest, whatever it may be, of the mortgagors. This in no way adversely affects others interested under the will of Lena Konner. Those interested in her property had the right to assign their interest whatever it might be. The assignee has no greater rights than the assignor. The final decree merely directs a sale of whatever interest the mortgagors may have had."
Rachel Konner, one of the defendants, was the wife of Josef Konner; she was deceased at the time of the filing of the bill herein. Josef Konner is also deceased, having died September 13th, 1934.
The complainant claims to be the owner of one-half of the lands and premises described in the bill of complaint, as the successor in interest of Louis Konner, Kevah Konner and Abram, or Abraham, Konner. The remaining one-half interest in the said premises is held under the will of Lena Konner by Charles Konner, Jacob Konner (now in Ray Holding Company) and Samuel Konner in equal shares.
Lena Konner left a last will and testament upon which letters testamentary, on May 19th, 1921, were granted to her husband, the said Josef Konner, who was named executor in the will. The portion of the will material to this suit provides in the third clause as follows:
"Third: I give, devise and bequeath all the rest, residue and remainder of my estate, be the same real, personal or mixed, unto my husband, Josef Konner, as Trustee, in trust, nevertheless, for the following uses and purposes: to collect the issues and profits thereof and from and out of the same to pay the taxes, insurance and keeping of the property in good repair, and to retain for his own use and benefit the net income, rents, issues and profits thereof, to be received *Page 549 
and enjoyed by him only during his lifetime or until his remarriage, and upon his death or remarriage, whichever shall first occur, I direct that the rest, residue and remainder shall be divided into six equal shares, one of which shares or parts I give to each of my six boys, to wit: Charles, Jacob, Samuel, Abraham, Louis and Keevie, their heirs and assigns forever. The shares of Charles, Louis and Keevie are given, devised and bequeathed to them subject to payment by them of One Hundred Dollars each, which I hereby give and bequeath to Jacob, Samuel and Abraham to partially repay them for money advanced by them to build the garage on my property, and I charge the payment of said sums of One Hundred Dollars upon the respective shares hereby given to Charles, Louis and Keevie. The shares of all the boys, as aforesaid, are given, devised and bequeathed to them subject to the payment by them of the following sums, in the following manner, which said sums I hereby give and bequeath to my daughters, Henrietta, Tillie, Molly and Clara, payable Two Hundred Dollars to each yearly, commencing one year after my death, without interest, and I charge the payment of said sums upon the shares hereby given to my said sons. In case the property given to my sons, and which I have charged with the aforesaid legacies, is sold and converted into money before the above legacies are fully paid, then I direct that such legacies, or so much thereof as may remain due and owing, be paid to my said daughters upon the death of my husband, if said property was sold during his lifetime, but, if sold after his death, then upon the sale thereof, I further direct that in case any of the said children shall die leaving lawful issue, then the child or children of such one so dying shall receive the parent's share on such distribution. In case any of them shall die without lawful issue, then the share or part to which such a one would have been entitled, if living, shall go to and be paid to the other surviving children or to their issues.
I give my Executor hereinafter named full power and authority to sell and convey any or all of the real estate of which I may die seized or of my interest in the same, and to make, execute and deliver good and sufficient deeds or conveyances in the law therefor, such sale to be public or private, within the discretion of my executor, and the proceeds to be invested and reinvested from time to time and the income therefrom to be paid to my husband, as aforesaid. In case sufficient income is not received from my estate to maintain and support my husband and keep the property in good condition and repair, then I authorize and empower my Executor to use such part of the principal of my estate as may be necessary therefor."
Josef Konner, the husband of Lena Konner, deceased, remarried on November 18th, 1922. On August 16th, 1927, he (then having an estate by the curtesy, or a life interest under the third paragraph of the will of Lena Konner, or so claimed, and the one-sixth interest of his son, Louis Konner) *Page 550 
with his sons, Abram Konner and Kevah Konner (they each having a one-sixth interest under the third paragraph of the will of Lena Konner) mortgaged their interests in the premises to the complainant; this mortgage was foreclosed and the complainant, through the sale which followed, acquired the respective interests of Josef, Abram and Kevah Konner.
On or about the 24th day of April, 1928, Josef Konner executed a deed conveying the one-sixth interest which he had acquired from his son, Louis Konner, to his daughter, Henrietta K. Waxberg. She was made a party to the foreclosure suit instituted by the complainant under its mortgage, which resulted in the final decree of July 1st, 1931, directing the sale of "all of the right, title and interest of the defendants Josef Konner, Rachel Konner, Abe (known sometimes as Abram or Abraham) Konner and Kevah Konner, as such right, title and interest existed as of the 11th day of October, 1927, the date of the recording of the collateral mortgage, together also with all such right, title and interest which said parties may have acquired since that date, including rights of dower and curtesy of, in and to the premises * * *."
On January 10th, 1924, Louis Konner married Mary Gallagher, a person not of the Jewish religion.
The questions for decision are:
First. What are the interests of the parties?
Second. Are their interests in real estate or in the administration of a trust?
Under the first question, when was the time of distribution referred to in the will of Lena Konner? Was it the date of the death, or the remarriage of her husband Josef Konner? A determination of that question has quite a bearing on the interests of Louis Konner in his mother's estate under the fourth paragraph of her will which declared a forfeiture of his interest in her estate in the event he married a woman "not of the Jewish religion." Does the fourth clause of the will of Lena Konner have the effect of creating a conditional limitation which is void because contrary to the rule against perpetuities? *Page 551 
The premises were not sold prior to the remarriage of Josef Konner, on November 18th, 1922, nor prior to his death on September 13th, 1934; they have not yet been sold. The will does not direct that the property should be sold and the proceeds divided. Neither does the will direct that the real estate be converted into personalty; at most, it directs that the estate be divided into six equal shares. In her initial gifts to her children, Lena Konner uses the words "devised and bequeathed;" she gives the shares to her six children, "their heirs and assigns forever." In the third paragraph of the will in referring to the charge of the amounts upon the shares which she directs to be paid to her daughters and certain of her sons, she uses the word "bequeath;" the word "devise" not appearing; the form of the charges imposed upon the shares given to the six sons is the form ordinarily used in imposing a charge upon real estate.
Had she intended the real estate to be converted into personalty and the proceeds divided, she would have provided for the payment out of the proceeds of larger amounts to certain of her sons and of specific amounts to her daughters, instead of which she directs three of the six sons to whom shares are given to pay a sum of money to the other three; and she directs all of the sons to whom shares are given to pay certain sums of money to the daughters. When she provides for what should occur if the real estate should have been sold by virtue of the power of sale given to her executor, she says "in case the property given to my sons and which I have charged with the aforesaid legacies, is sold and converted into money before the above legacies are fully paid" which is language only appropriate if there were a conception on her part that the property, i.e., the real estate, was to come to the six boys as real estate unless, because of some emergency which she has provided for by the language of her will giving her executor power to sell, should have happened, which would have made proper the exercise of the power to sell.
The conclusion is irresistible that each of the six sons took a fee in the real estate subject to the estate of the father by *Page 552 
curtesy, or for life, and subject to being defeated by the exercise of the power of sale. Trenton Trust, c., Co. v.Moore, 83 N.J. Eq. 584; affirmed, 84 N.J. Eq. 194; Wells v.Bennett, 100 N.J. Eq. 358; Redmond v. Gummere, 94 N.J. Eq. 216.
Josef Konner, the executor, never attempted to execute the power of sale conferred by the will. About a year after he qualified as executor, he remarried. That event unquestionably fixed, and resulted in the arrival of, the time of distribution of the estate, and the interests of the six children in the realty then became vested. The testimony indicated that the sons and daughters of the decedent treated the property as real estate; but if the language did not give expression to that effect, their actions did. The father and two sons, Kevah and Abraham, mortgaged their interests as real estate. The BondedBuilding and Loan Association v. Konner, supra.
In the suit in this court of Charles E. Konner and others, complainants, Docket 72, page 549, wherein the defendants herein were parties, it appears that Josef Konner, as executor and trustee of the estate of Lena Konner, attempted to exercise the power of sale conferred upon him, by conveying the property to himself, individually, by deed dated March 17th, 1927. Charles Konner, and others, filed a bill to set aside the deed, and in April, 1930, a decree to this effect was made, and it was, in the same order, further decreed that Josef Konner had a right of curtesy in the lands, and directed this complainant, who was a party to that suit, to amend its bill of foreclosure in the suit to foreclose then pending in this court, to point out and indicate "that the interest of the said defendant Josef Konner in the said lands and premises of which his said former wife died seized is the interest of tenant by curtesy." In that suit this court treated the property as real estate and as subject to the right of curtesy of the husband, Josef Konner.
Even though there had been a direction to convert, the parties have elected to take as real estate. Certainly they had such a right to so elect; and having elected, they are bound by it.Scudder v. Stout, 10 N.J. Eq. 377; Rogers v. Lippincott,90 N.J. Eq. 70; Doyle v. Blake, 77 N.J. Eq. 142; Beiderman v.Sparks, 61 N.J. Eq. 226; affirmed, 64 N.J. Eq. 374. *Page 553 
Notwithstanding the fact that the will contains a power of sale, such power does not preclude the beneficiaries from mortgaging their rights, and the execution of such a mortgage undoubtedly is in effect an election on their part to take land rather than personalty. In Gest v. Flock, 2 N.J. Eq. 108, the court (Chancellor Pennington) said:
"There is another view of this case equally fatal to the complainant's pretensions. Where a sale is directed to be made of lands, and the same person is entitled to take the lands that would take the money in case of a sale, and the party elects to take lands, a court of equity will not disturb that election, or compel a sale. Osgood v. Franklin, 2 John. Ch. Rep. 21, Amler
v. Amler, 3 Ves. 585. The giving of the mortgage by Albert, was a clear election on his part to take land, and upon no principle can that election be now disturbed."
Vice-Chancellor Howell, in Maddock v. Progressive InvestmentCo., 79 N.J. Eq. 139, said:
"It is quite apparent from reading the will that the testator made no equitable conversions of the estate in question, and the point is whether the devisees had the right to elect to take the land instead of the proceeds of the sale thereof, and if they had that right whether they have exercised it. In my opinion, they had the right to make such election, and they have elected in pursuance of such right to take the land. This is evidenced by the deed of July 26th, 1906. All the residuary legatees were parties to this instrument either as grantors or grantees. The grantors must be held to have elected to take the land because they deal with it as land by making a deed of conveyance of it to the other two legatees; and the other two legatees must be held to have so elected for the reason that they accepted a deed from the grantors, thereby dealing with the subject-matter of the controversy as land; they not only took title to it as land, but paid the consideration money therefor, and the title to all the interests then became vested in them by virtue of a deed of conveyance which treated the property in question in land."
Again, Vice-Chancellor Backes in Rogers v. Lippincott,supra, said: *Page 554 
"Moreover, it appears by the allegations of the bill that the defendant executed mortgages upon their several interests in the land. This was an election on their part to reconvert the personalty into real estate. Gest v. Flock, 2 N.J. Eq. 108;Maddock v. Progressive Investment Co., 84 Atl. Rep. 578."
It will be observed in the last cited case there was a specific direction of the testator to sell and divide the proceeds. There is no such direction in the will in the instant case.
I am satisfied that the evidence herein indicates that all of the six sons treated the property as real estate and their interests therein as such. The daughters of the decedent who have charges against the interests of the sons named in the fourth paragraph of decedent's will, are in nowise concerned, or affected in, or with, the election, or the attitude of the sons. Their interests are charges, as the will indicates. Mahaney v.Mahaney, Jr., 91 N.J. Eq. 473.
The period of distribution as provided for in the will was the remarriage of the father; his marriage preceded the marriage of the son, Louis Konner, to a person who was not of the Jewish religion. The provision of the fourth paragraph of the will becomes effective only when "prior to the period of distribution herein provided for" any son or daughter should marry a man or woman not of the Jewish religion. The estate of the son, Louis Konner, had vested through the remarriage of his father, Josef Konner, before his marriage to Mary Gallagher. There was no provision for divesting; and, if there were, it would not hold since it would be against the rule of perpetuities. Keepers v.Fidelity Title and Deposit Co., 56 N.J. Law 302.
In Schneider v. Meyer, 97 N.J. Eq. 335, the court of errors and appeals said:
"We agree with the vice-chancellor that by the terms of the will the children of the testator took a vested estate. It is also our opinion that this vested estate would have become absolute and indefeasible if the children of the testator had lived to the time of the death or remarriage of the widow which is the time fixed in the will for the period of distribution." *Page 555 
The facts in this case warrant the relief the complainant seeks and I shall advise an order granting its prayer for partition. I find the interest of the complainant to be a one-half interest made up of the one-sixth interest of Louis Konner, the one-sixth interest of Kevah Konner, and the one-sixth interest of Abram Konner. The one-sixth interest of Louis Konner is subject to the payment of a charge of $100 for the benefit of the one-sixth interest respectively of Jacob Konner, Samuel Konner and Abram Konner. The complainant being the holder of the one-sixth interest of Abram Konner, it accordingly benefits to the extent of one-third of $100 the charge against the interest of Louis Konner; the interest of Louis Konner in the hands of the complainant is subject to a charge of $66.66; $33.33 for the benefit of the interest of Jacob Konner, and $33.33 for the benefit of the interest of Samuel Konner.
The one-sixth interest of Kevah Konner, held by the complainant, is subject to a charge of $100 for the benefit of the interest of Jacob Konner, Samuel Konner and Abram Konner. The one-sixth interest of Kevah Konner in the hands of the complainant is subject to a charge of $66.66; $33.33 being for the benefit of the interest of Jacob Konner and $33.33 being for the interest of Samuel Konner.
The interests of all of the six sons, Charles, Jacob, Samuel, Abram, Louis and Kevah are charged with the payment of $1,000 to each of the four daughters, totaling $4,000; therefore the interest of the complainant being a one-half interest in the property is charged with the sum of $2,000 for the benefit of the daughters.
The one-sixth interest of the son, Jacob Konner, now held by the Ray Holding Corporation, is subject to a charge of $666.66 for the benefit of the four daughters.
The interest of Charles E. Konner is a one-sixth interest in the premises; it is subject to a charge of $666.66 in favor of the four daughters, and subject to a charge of $100 for the benefit of the interest of Jacob (now held by the Ray Holding Company), Samuel and Abram Konner. The interest of Abram is now held by the complainant so that the complainant *Page 556 
is entitled to $33.33 of the $100 charge against the interest of Charles Konner.
The interest of Charles Konner is also subject to a right of dower of his wife, Rose Konner.
One-sixth interest is held by Samuel Konner subject to a charge of $666.66 for the benefit of the daughters; he is entitled to a benefit of $100 from the share of interest of Charles, Louis and Kevah Konner.
The interests of Jacob Konner now held by the Ray Holding Company, is also subject to certain judgment set forth in the bill, and the amendment of March 27th, 1934, as well as are the interests of Ray Holding Company and Samuel Konner. The judgments mentioned in the bill of complaint against the interests of Kevah Konner, were entered after the mortgaging of the interests of Kevah Konner to the complainant; they, therefore, do not effect the interest of Kevah Konner in the hands of the complainant.
The respective interests should be made subject to such judgments, and state, or federal inheritance, taxes as may be liens.